IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CATHERINE HOWER and GRANT HOWER | : | |
| | : | CIVIL ACTION |
| v. | : | NO. 08-1736 |
| | : | |
| WAL-MART STORES, INC. | : | |

**SURRICK, J.**                                                                                                            **JUNE 16th, 2009**

### MEMORANDUM

Catherine Hower ("Plaintiff") filed this negligence action after she sustained injuries in a slip-and-fall at a store operated by Wal-Mart Stores, Inc. ("Defendant"). Presently before the Court is Defendant's Motion for Summary Judgment. (Doc. No. 11.) For the following reasons, the Motion will be granted.

### I. BACKGROUND

On August 4, 2006, at 11:00 a.m., Plaintiff and her husband stopped at the Wal-Mart store in Horsham, Pennsylvania, to purchase snacks and other items en route to an appointment. (Doc. No. 11 ¶¶ 1, 3; Doc. No. 12 ¶¶ 1, 3; C. Hower Dep. 14-17.) It was a "normal busy day" at the store and "there was [a] good volume" of customers inside. (G. Hower Dep. 14-15.) Plaintiff frequented this particular Wal-Mart at least three or four times per month, and she had been there a week earlier. (C. Hower Dep. 16, 31.) On this occasion, Plaintiff and her husband separated to make their respective purchases and then reunited in the cosmetics department. (C. Hower Dep. 17; Leister Dep. 18.) Plaintiff began walking down an aisle as her husband followed behind her. (C. Hower Dep. 17; G. Hower Dep. 18.) Plaintiff reached the end of the aisle and turned the corner to walk down the next aisle. (C. Hower Dep. 22-23.) About five seconds after

Plaintiff turned the corner and walked into the next aisle, she slipped on a liquid substance and fell on the floor. (C. Hower Dep. 17, 19-20, 23; G. Hower Dep. 21, 24.) Plaintiff did not see the liquid until after she fell and was sitting in it. (C. Hower Dep. 20.) Plaintiff injured her knee and back in the fall. (*Id.* at 29.)

The liquid substance was bubble bath that consisted of several "blotches" spread over two or three feet on the floor. (C. Hower Dep. 19-21; Byrd Dep. 84; Moore Dep. 57-58.) Plaintiff noticed an empty bottle of the bubble bath beside the spill. (C. Hower Dep. 19-21.) No footprints, shopping cart marks, tracks, or slip marks were visible in the spill. (C. Hower Dep. 21, 23; *see also* Moore Dep. 58 ("I saw no disturbance of the blotches of material on the floor").) Plaintiff also does not remember seeing any dust in the spill. (C. Hower Dep. 26.) Plaintiff did not see any other spills, liquids on the floor, or other hazardous conditions in the store before she fell. (Doc. No. 11 ¶ 17; Doc. No. 12 ¶ 17.) The floors were otherwise clean. (C. Hower Dep. 19.)

Gloria Leister ("Leister") was the manager of the cosmetics department where Plaintiff fell. (Leister Dep. 18.) On the day of Plaintiff's accident, Leister started working at 7:00 a.m. and inspected the aisles sometime that morning:

> Q: Do you know when the last time you were in the aisle where this fall occurred had been that day?
> A: Earlier that morning when I came in I, you know, checked the aisles for any merchandise on the floor, whether it was, you know, liquid or cosmetic wise.

(*Id.* at 19.) In addition to her initial inspection, Leister was supposed to make periodic safety sweeps throughout the day. (*Id.* at 19-20, 28.) A safety sweep is when all Wal-Mart associates stop what they are doing and inspect the aisles to "look for things people might slip on or trip

2

over such as merchandise, debris, or liquid on the floor." (Doc. No. 11-7.)  Under store policy, associates immediately clean up any spills that are identified during a safety sweep in order to reduce the incidence of slips, trips, and falls.  (*Id.*; *see also* Doc. No. 11 ¶ 24; Doc. No. 12 ¶ 24.)  Safety sweeps are announced using the store's intercom system at the bottom of every hour. (Leister Dep. 20; *see also* Suchy Dep. 65-66 (noting that safety sweeps are "generally announced over the intercom system, and they're approximately every hour, hour to 90 minutes").)  However, at the time of Plaintiff's fall, Leister was in the back of the store at the receiving area and could not hear the intercom.  (Leister Dep. 19, 29.)  Leister does not remember how long she was in the receiving area before Plaintiff's fall.  (*Id.* at 19.)

     Leister testified at her deposition that when a Wal-Mart associate is absent from his or her department when a safety sweep is announced, another associate checks the absent associate's area.  (*Id.* at 20 ("If we weren't in your [sic] area and [a safety sweep was] called you had area people that would check your area.  We all worked as a team and helped each other.").)  Leister initially testified that she told other associates that she would be working in the back:

> Q: Are you supposed to tell somebody that you're going to be in the back and not –
> A: Oh yeah.  I let people know that I was going to be off the floor.

(*Id.* at 27.)  However, Leister later acknowledged the possibility that she did not tell anyone that she would be working in the back:

> Q: Did you tell anyone that day that you were in the back working during that morning?
> MS. TILSON:  Asked and answered.
> A: See, I'm not sure how I answered it.  I possibly could have and I don't recall, we're going back two-and-a-half years ago.
> Q: Okay.  So you possibly might not have?
> A: It's possible.

(*Id.* at 88.)

It is therefore unclear whether the aisle was inspected after Leister's morning safety sweep but before Plaintiff's fall. The store does not have any written documentation of its safety sweeps. (Byrd Dep. 102.) The store also does not have any surveillance videos available of the aisle from the day in question. (Suchy Dep. 18.) None of the witnesses whose testimony is in the record knew when an associate had last inspected the aisle. (Byrd Dep. 102; Moore Dep. 69; Clerihan Dep. 101; Suchy Dep. 65-66; Leister Dep. 25-26; Doc. No. 18 at 3.) While there is evidence that other associates generally performed the safety sweeps in Leister's department in her absence, there is no evidence that an associate actually performed the safety sweep before Plaintiff fell. (Leister Dep. 26-27; *see also* Bryd Dep. 92 (testifying that all associates have a responsibility to inspect aisles for hazards as part of their job routine).)

On March 12, 2008, Plaintiff filed a complaint in the Philadelphia County Court of Common Pleas alleging negligence against Defendant. On April 11, 2008, Defendant removed the action to this Court. (Doc. No. 1.) An arbitration trial is scheduled for August 20, 2009. Defendant has filed the instant Motion for Summary Judgment, which is now ripe for disposition. (Doc. No. 11.)

## II.   LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists only when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the initial burden of demonstrating that there are no facts supporting the nonmoving party's legal position. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986). Once the moving party carries this initial burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (explaining that the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts"). The nonmoving party cannot "rely merely upon bare assertions, conclusory allegations or suspicions" to support its claim. *Fireman's Ins. Co. v. DeFresne*, 676 F.2d 965, 969 (3d Cir. 1982). Rather, the party opposing summary judgment must go beyond the pleadings and present evidence through affidavits, depositions, or admissions on file to show that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324. When deciding a motion for summary judgment, we must view facts and inferences in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255; *Siegel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1127 (3d Cir. 1995). We must not resolve factual disputes or make credibility determinations. *Siegel Transfer*, 54 F.3d at 1127.

**III.    DISCUSSION**

Plaintiff asserts a negligence claim based on premises liability. Under Pennsylvania law, the elements of negligence are: (1) the existence of a duty or obligation recognized by law; (2) a breach of the duty; (3) causal connection between the breach of duty and the resulting injury; and (4) actual loss or damage. *Krentz v. Consol. Rail Corp.*, 910 A.2d 20, 27 (Pa. 2006). The nature of the duty turns upon the relationship between the parties at the time of the plaintiff's injury. *See, e.g.*, *Pittsburgh Nat'l Bank v. Perr*, 637 A.2d 334, 336 (Pa. Super. Ct. 1994) (discussing

duty of care and the relationship between the parties). In premises-liability actions, the duty of care that a possessor of land owes to one who enters upon the land "depends upon whether the latter is a trespasser, licensee, or invitee." *Guttridge v. AP Green Serv., Inc.*, 804 A.2d 643, 655 (Pa. Super. Ct. 2002) (citation omitted). The parties do not dispute that Plaintiff was an invitee in Defendant's store. (*See* Doc. No. 11 at 10; Doc. No. 12 at 9.)

"It is well settled that a business owner owes a duty to an invitee 'to maintain its premises in a reasonably safe condition for the contemplated uses thereof and the purposes for which the invitation was extended.'" *David by Berkeley v. Pueblo Supermarket of St. Thomas*, 740 F.2d 230, 236 (3d Cir. 1984) (quoting *Morris v. Gimbel Bros., Inc.*, 394 F.2d 143, 145 (3d Cir. 1968)). "An invitee is entitled to expect that the [business owner] will take reasonable care to ascertain the actual condition of the premises and, having discovered it, either to make it reasonably safe by repair or to give warning of the actual condition and the risk involved therein." Restatement (Second) of Torts § 343 (1965), comment d. A possessor of land is "not an insurer of the visitor's safety." *Rabutino v. Freedom State Realty Co.*, 809 A.2d 933, 939 (Pa. Super. Ct. 2002) (citation omitted). Rather, a possessor of land is subject to liability for physical harm caused to invitees by a condition on the land if, but only if, the possessor:

> (a) knows or by the existence of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
> (c) fails to exercise reasonable care to protect them against the danger.

*Carrender v. Fitterer*, 469 A.2d 120, 123 (Pa. 1983) (adopting Restatement (Second) of Torts § 343 (1965)). "[T]he mere happening of an accident or an injury does not establish negligence nor raise an inference or presumption of negligence nor make out a prima facie case of

negligence." *Amon v. Shemaka*, 214 A.2d 238, 239 (Pa. 1965).

In a premises liability action involving a slip-and-fall, "[t]he threshold of establishing a breach of duty is notice" of the hazardous condition. *Scruggs v. Retail Ventures, Inc.*, No. 06-1148, 2008 WL 2687147, at *5 (W.D. Pa. July 8, 2008) (citations omitted).  To establish notice, an "invitee must prove either the proprietor of the land had a hand in creating the harmful condition, or he had actual or constructive notice of such condition." *Id.* (citations omitted). "Constructive notice requires proof that the condition had been present long enough that, in the exercise of reasonable care, the defendant should have known of its presence." *Id.* at *6 (citing *Martino v. Great Atl. & Pac. Tea Co.*, 213 A.2d 608, 610-11 (Pa. 1965)).  "State and federal courts applying Pennsylvania law in this area have consistently required a plaintiff 'to provide some proof as to the length of time a spill existed on the floor to establish constructive notice.'" *Cox v. Wal-Mart Stores East, L.P.*, No. 07-2391, 2008 WL 4072804, at *4 (E.D. Pa. Aug. 26, 2008) (citation omitted); *see also Neve v. Insalaco's*, 771 A.2d 786, 791 (Pa. Super. Ct. 2001) ("[O]ne of the most important factors to be taken into consideration is the time elapsing between the origin of the defect or hazardous condition and the accident.") (citation omitted).

Footprints or tracking in the spilled substance is evidence of temporal duration and can support a finding of constructive notice.  *See, e.g.*, *Evans v. Canteen Corp.*, No. 94-2381, 1995 WL 355231, at *2 (E.D. Pa. June 13, 1995) ("An important factor in actions where the plaintiff slips on a spilled substance is whether there are footprints or 'tracking' through and around the area of spill."); *Gales v. United States*, 617 F. Supp. 42, 44 (W.D. Pa. 1985) ("The absence of tracking from the area of a spill is evidence that the spill is one of recent origin." (citing *Lanni v. Pa. R.R. Co.*, 88 A.2d 887 (Pa. 1952))), *aff'd*, 791 F.2d 917 (3d Cir. 1986).  Absent evidence of

the duration of time a spill remained on the floor prior to an accident, courts interpreting Pennsylvania law have granted summary judgment to the defendant and made clear that constructive notice of the spill cannot be inferred.  *See, e.g.*, *Henderson v. J.C. Penney Corp.*, No. 08-0177, 2009 WL 426180, at *5 (E.D. Pa. Feb. 20, 2009) (granting summary judgment for the defendant where there was no evidence of how long the hazard was on the floor before the fall); *Cox*, 2008 WL 4072804, at *8 (same, where "there [was] no evidence tending to show whether the oil spill had been on the Wal-Mart floor for seconds, minutes, hours or days"); *Read v. Sam's Club*, No. 05-0170, 2005 WL 2346112, at *2 (E.D. Pa. Sept. 23, 2005) (same, where there was no evidence "to show how long the spill was on the floor"); *Flocco v. Super Fresh Markets, Inc.*, No. 98-0902, 1998 WL 961971, at *2-3 (E.D. Pa. Dec. 29, 1998) (same, where there was no evidence to show how long gravy was on the floor, despite evidence that plaintiffs were shopping for a half hour and did not hear sound of breaking glass or observe anyone in the aisle at the time of the fall); *Clark v. Fuchs*, No. 93-1422, 1994 WL 13847, at *3 (E.D. Pa. Jan. 14, 1994) (same, where there was no evidence to indicate how long the paper on which the plaintiff slipped was on the stairs), *aff'd*, 39 F.3d 1168 (3d Cir. 1994); *Gales*, 617 F. Supp. at 44 (same, where there was no evidence to show how long the liquid was on the floor); *Dimino v. Wal-Mart Stores, Inc.*, 83 Pa. D. & C. 4th 169, 178 (Pa. C.P. Monroe County 2007) (same, where "a fact-finder would have to 'guess whether the grease spot was on the [floor] 10 minutes, 10 hours or 10 days prior to plaintiff's accident'" (quoting *Hess v. Sun Ray Drug Co.*, 127 A.2d 699, 701 (Pa. 1956))); *Moultrey v. Great A & P Tea Co.*, 422 A.2d 593, 596-97 (Pa. Super. Ct. 1980) (affirming grant of compulsory non-suit to the defendant where there was no evidence of how long the cherry on which the plaintiff slipped had been on the floor).

Defendant argues that summary judgment is appropriate because there is no evidence that it had notice or should have had notice of the spill.  (Doc. No. 14 at 5.)  Defendant maintains that there is no evidence as to how long the spill was present on the floor and "all evidence leads to the conclusion that the spill was recent."  (*Id.*)  Defendant argues that summary judgment motions "have been consistently granted" under similar facts.  (*Id.* at 6.)  Plaintiff responds that Defendant failed to perform a safety sweep that would have identified the spill and prevented Plaintiff's injury.  (Doc. No. 12 at 8.)  Plaintiff relies on Leister's absence from the department and the fact that Defendant's employees did not know "when the last time prior to the fall the aisle had been inspected" for the proposition that Defendant failed to reasonably inspect the aisle.  (*Id.* at 8-9.)  Plaintiff argues that Defendant "must be held accountable for deviating from [its] own safety measures."  (*Id.* at 9.)  Plaintiff contends that Defendant's failure to make a safety sweep amounts to constructive notice of the spill.  (*Id.* at 11.)

There is no allegation or evidence that Defendant had actual notice of the spill or that Defendant created the spill.  Therefore, the issue is whether Plaintiff has presented evidence sufficient for a reasonable jury to conclude that Defendant had constructive notice of the spill.  A plaintiff can only meet this burden by demonstrating that the dangerous condition had existed "for such a length of time that the storeowner, in the exercise of ordinary care, should have been aware of [it]."  *Berkeley*, 740 F.2d at 236.

The evidence does not support the conclusion that the spill existed for anything other than a short amount of time before Plaintiff fell.  At the time of the accident, the store was busy and there was a "good volume" of customers inside.  (G. Hower Dep. 14-15.)  The spill was "[a]bout two feet across" the aisle.  (C. Hower Dep. 19.)  Plaintiff slipped in the middle of the

9

aisle. (*Id.* at 17.) Notwithstanding the volume of customers in the store and the size and location of the spill, there were no footprints, shopping cart marks, tracks, or slip marks in the liquid. (*Id.* at 21, 23.) Plaintiff does not remember seeing any dust in the spill, and the floors were otherwise clean. (*Id.* at 26.) None of this evidence suggests that the spill existed for such a length of time that Defendant, in the exercise of ordinary care, should have been aware of it. *See, e.g.*, *Saldana v. Kmart Corp.*, 260 F.3d 228, 234 (3d Cir. 2001) (noting that even the presence of dust in the puddle is not enough to show duration absent evidence of how much dust was found, how long it would have taken for dust to accumulate, or how the dust accumulated). Plaintiff's own argument makes the point. According to Plaintiff, "[d]espite plaintiff's clothing becoming wet from absorbing the liquid bubble bath . . . , upon his arrival to the scene Mr. Moore still noticed the bubble bath to extend not only beyond what is depicted in the photographs [taken after the accident], but what he estimated to cover a three foot wide area on the floor." (Doc. No. 12 at 9; *see also* Doc. No. 18 at 5.) If the spill was as wide as Plaintiff seems to argue, it defies logic that no one in the store on a "normal busy day" would have disturbed the spill unless it was recent. This is especially true here since Plaintiff slipped in the middle of the aisle, not in an isolated corner where the spill would have been protected from the wheels of passing shopping carts.

      Plaintiff argues that in order to have resulted in an empty bottle, ample time must have elapsed for the liquid to escape and spread across the floor. (Doc. No. 18 at 5.) The liquid in this case spilled from a "[r]egular shampoo-size" bottle that Plaintiff described as seven inches in height. (C. Hower Dep. 20.) The fact that this bottle was empty at the time of Plaintiff's fall says little about how long the spill was on the floor. The spill resulting in the empty bottle could have occurred minutes or even seconds before Plaintiff's fall. Plaintiff must provide something

more than just an empty seven-inch bottle to establish notice. Because the record does not contain evidence of the temporal duration of the spill, summary judgment in favor of Defendant is required. *See, e.g.*, *Henderson*, 2009 WL 426180, at *5 (granting summary judgment where the plaintiff presented no evidence of how long a clothing tag had been on the floor); *Cox*, 2008 WL 4072804, at *8 (same, where the plaintiff fell on an oil spill); *Read*, 2005 WL 2346112, at *2 (same, where the plaintiff fell on puddle of clear liquid); *Flocco*, 1998 WL 961971, at *2-3 (same, where the plaintiff fell on gravy); *Clark*, 1994 WL 13847, at *3 (same, where the plaintiff fell on newspaper); *Gales*, 617 F. Supp. at 44 (same, where the plaintiff fell on clear liquid); *Martino*, 213 A.2d at 610 (same, where the plaintiff fell on a grape); *Estate of Swift v. Ne. Hosp. of Phila.*, 690 A.2d 719, 722 (Pa. Super. Ct. 1997) (same, where the plaintiff fell on water); *Dimino*, 83 Pa. D. & C. 4th at 178 (same, where the plaintiff fell on a grease spot).

      Plaintiff makes much of the fact that when the accident occurred, Leister was in the rear of the store where she could not hear the intercom announcing the hourly safety sweeps. Plaintiff's argument is that Defendant should have (and would have) known about the spill by adhering to its safety and inspection policies. (*See* Doc. No. 12 at 8.) This argument has several flaws. First, the argument assumes that Defendant breached a duty of care by failing to adhere to its policies. Defendant's policies are not the equivalent of its duty of care. For a variety of reasons, a store owner like Defendant may adopt safety policies that exceed the duty of care and provide greater protection to invitees. A store owner like Defendant should not be faced with a lawsuit for negligence by failing to live up to a heightened, self-imposed duty of care. *See, e.g.*, *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 543 (5th Cir. 2005) (applying Texas law) ("[A] company's self-imposed policy with regard to inspection, taken alone, does not establish the

standard of care that a reasonably prudent operator would follow."); *Hudson v. Wal-Mart Stores E., L.P.*, No. 06-0035, 2007 WL 2107466, at *3 (W.D. Va. July 20, 2007) (applying Virginia law) ("Violation of company policy does not show a breach in the standard of care." (citing *Hottle v. Beech Aircraft Corp.*, 47 F.3d 106, 110 (4th Cir. 1995))); *Boutilier ex rel. Boutilier v. Chrysler Ins. Co.*, No. 99-2270, 2001 WL 220159, at *1 (M.D. Fla. Jan. 31, 2001) (applying Florida law) ("The mere fact that [the defendant] had an internal corporate policy does not create a legal duty or cause a breach of that duty."). In addition, Defendant's policy is not a statute the breach of which can amount to negligence per se. *See, e.g.*, *Myers v. United States*, 17 F.3d 890, 900 n.12 (6th Cir. 1994) (noting that "one cannot be presumed negligent at law simply for violating one's *own* rules") (emphasis in original) (citation omitted).

Second, the argument incorrectly equates a *lack of evidence* that Defendant inspected the aisle with proof that Defendant did not inspect the aisle. Plaintiff bears the burden of proof and must point to evidence to show a genuine issue of material fact for trial. The fact that Leister might not have performed additional safety sweeps after her morning inspection does not mean that the aisle was not inspected by other associates during that time. The evidence shows that associates generally worked as a team and inspected each others' departments when a department manager was absent. Plaintiff reverses the burden of proof and invites conjecture.

Third and most importantly, the argument conflates evidence of Defendant's inspection practices with evidence of the duration of the spill. Defendant's alleged failure to perform a safety sweep says nothing about how long the spill was present. Indeed, Defendant cannot be liable for negligence by failing to identify and clean up a spill only a short time after its occurrence. *See Craig v. Franklin Mills Assocs.*, 555 F. Supp. 2d 547, 550 (E.D. Pa. 2008) ("The

duration of the hazard is important because if a hazard only existed for a very short period of time before causing any injury, then the possessor of the land, even 'by the exercise of reasonable care,' would not discover the hazard, and thus would owe no duty to protect invitees from such a hazard." (quoting Restatement (Second) of Torts § 343))). As we noted above, Defendant is not an insurer of Plaintiff's safety in the store. *See Rabutino*, 809 A.2d at 939 (noting that a possessor of land is "not an insurer of the visitor's safety").

The case of *Kujawski v. Wal-Mart Stores, Inc.*, No. 06-4120, 2007 WL 2791838, at *3 (E.D. Pa. Sept. 25, 2007), is instructive. In *Kujawski*, the plaintiff was shopping at a Wal-Mart store. *Id.* at *1. The plaintiff was injured when she slipped on a puddle of liquid in an aisle. *Id.* An empty bottle of baby lotion was found on the floor nearby. *Id.* There were no footprints, shopping cart tracks, or dirt in the puddle. *Id.* The store generally performed safety sweeps every three hours to check for spills, but there was no evidence of the last time the store performed the safety sweep or inspected the aisle where the plaintiff fell. *Id.* at *4. The court granted summary judgment for Wal-Mart, finding "no evidence in the record as to how the spill happened or as to how long the spill was on the floor prior to the accident." *Id.* The court observed that courts interpreting Pennsylvania law "have consistently required a plaintiff to provide some proof as to the length of time a spill existed on the floor to establish constructive notice." *Id.* (citations omitted). The court also observed that "the evidence regarding the physical appearance of the puddle and its surrounding area allows no inference other than that the puddle was fresh." *Id.* The court concluded that a reasonable jury could not find that the defendant had constructive notice of the puddle. *Id.*

As in *Kujawaski*, the spill here contained no footprints or shopping cart tracks to suggest

how long it was on the floor before the accident. The spill was still wet, and Plaintiff did not recall seeing any dust in the spill. In short, there is no evidence that the spill was anything other than fresh. Under these circumstances, a reasonable jury could not conclude that Defendant had constructive notice of the spill. *See Evans*, 1995 WL 355231, at *3 (granting summary judgment for the defendant where there was no evidence of tracking in the spill, no evidence of dirt or debris in the spilled area, and no evidence to show the length of time the hazard was present).

Plaintiff attempts to distinguish *Kujawaski* based upon the fact that in *Kujawaski* "there was no evidence whatsoever as to whether there was an employee monitoring the condition of the floors at the time of plaintiff's fall, an element decidedly established in the negative in this case." (Doc. No. 12 at 11.) Plaintiff's argument is unavailing. Like Defendant in this case, the store in *Kujawaski* had a policy of performing safety sweeps. *See* 2007 WL 2791838, at *2 n.3. There is no evidence here, as in *Kujawaski*, of when the store actually performed the safety sweep. Leister testified that an area department manager, another associate, or even management would have performed the safety sweep in her absence, but she did not know who actually did so. (Leister Dep. 26, 52, 55.) Counsel for both parties acknowledged during Leister's deposition that any attempt by Leister to identify who inspected the aisle would be speculative:

> Q: So if no one was in the general area while you were in the back of the store . . . who would have been responsible to inspect the cosmetic aisles that you were in charge of?
> A: Again, I can't say who was on the floor. It would have been, again, whoever is in the general area.
> Q: What if no one was in the general area, what if they were helping another manager in a different department that was in the back?
> MS. TILSON: Objection. Calls for speculation.
> MR. STERNBERG: That's my point.
> A: She's right. I can't speculate because I don't know. If there's –
> Q: Is it possible that no one would have inspected the floor if no one was

>  > in the area and you were in the back?
> A: No.
> Q: Who would have done it, then?
> A: Again, it's speculation who it could have been.

(Leister Dep. 55-56.) It is clear from this testimony that whether an employee was monitoring the condition of the floors when Plaintiff fell is not "decidedly established in the negative," as Plaintiff argues.[1] (Doc. No. 12 at 11.)

Plaintiff relies on the cases of *Kania v. Sbarro, Inc.*, No. 97-6863, 1998 WL 800320, at *2 (E.D. Pa. Nov. 13, 1998), and *Ryan v. Super Fresh Food Markets, Inc.*, No. 99-1047, 2000 WL 537402, at *2 (E.D. Pa. Apr. 26, 2000). These cases are inapposite. In *Kania*, the plaintiff slipped on lettuce that was "slightly brown" at a buffet-style restaurant. 1998 WL 800320, at *2. The lettuce was on the floor near the buffet. *Id.* at *1. The manager of the restaurant generally checked the buffet area every five to ten minutes to replenish the food and inspect the floor, but on the day in question, the restaurant was understaffed and the manager did not see anyone spill food on the floor. *Id.* The plaintiff saw no employees in the buffet area for five to ten minutes immediately before the accident. *Id.* The plaintiff also offered expert testimony that the floor was unreasonably dangerous and conducive to slips because of the type of surface used and the absence of mats. *Id.* The court observed that the "slightly brown" color of the lettuce and the absence of employees before the accident indicated that the lettuce had been on the floor for a sufficient period of time such that the defendant reasonably should have discovered it. *Id.* The court further observed that, based upon the opinion of the plaintiff's expert, a jury could find that

---

[1] Interestingly, Plaintiff's Supplemental Reply Memorandum repeats verbatim many of the arguments from the Reply Memorandum but omits the sentences attempting to distinguish the instant case from *Kujawaski*. (*Compare* Doc. No. 18 at 8, *with* Doc. No. 12 at 11.) Plaintiff's Supplemental Reply Memorandum does not mention *Kujawaski*.

the defendant created the dangerous condition. *Id.* at *2. Accordingly, the court denied the defendant's motion for summary judgment. *Id.* at *3. Similarly, in *Ryan* the plaintiff slipped on pudding in a grocery store after conversing with other patrons for fifteen minutes before the fall and while standing within fifteen feet of the pudding. 2000 WL 537402, at *2. The plaintiff testified that if the pudding had fallen during the fifteen-minute conversation, she would have seen it. *Id.* The court denied summary judgment for the defendant. *Id.*

In both cases, the plaintiffs offered evidence of temporal duration: the brown lettuce and five- to ten-minute absence of employees in *Kania*, and the fifteen-minute conversation in *Ryan*. By contrast, there is no evidence here that would allow a jury to infer how long the spill was present on the floor. Whether the spill was present for fifteen minutes or fifteen seconds before Plaintiff fell is a matter of sheer speculation. *See Saldana*, 260 F.3d at 234 ("[T]he mere possibility that something occurred in a particular way is not enough, as a matter of law, for a jury to find it probably happened that way."); *Deane v. Trump Plaza*, No. 08-2747, 2009 WL 192510, at *3 (E.D. Pa. Jan. 26, 2009) ("In the absence of evidence of the time elapsing between the origination of the condition and the accident, to conclude that the transition strip was raised long enough that, in the exercise of reasonable care, Defendant should have known of its presence would require a factfinder to engage in speculation and conjecture."); *Kujawaski*, 2007 WL 2791838, at *5 ("A jury would be asked to engage in pure speculation if this case were allowed to go forward.").

Plaintiff cites the case of *Winters v. Marina District Development Co.*, No. 05-5937, 2007 WL 1491159, at *3 (E.D. Pa. May 18, 2007), *aff'd*, 2009 WL 693267 (3d Cir. 2009), in support of the proposition that "where there is circumstantial evidence that no employee was in the area of

the spill for a sufficient length of time, courts have established constructive notice." (Doc. No. 12 at 11.)  Plaintiff's reliance on *Winters* is misplaced.  In *Winters*, the plaintiff went to sit down at a slot machine next to her mother at the Borgata casino in Atlantic City.  2007 WL 1491159, at *4.  As the plaintiff approached the slot machine, she slipped on a liquid substance on a metal plate near the slot machine chair and sustained injuries.  *Id.*  The plaintiff's mother testified at her deposition that she was sitting at the adjacent slot machine for at least an hour before the accident.  *Id.*  The plaintiff's mother testified that while she was sitting there, she did not spill any liquids, she saw no other patrons nearby, and she saw no Borgata personnel inspect the area for spills.  *Id.*  The court denied summary judgment for the defendant on the plaintiff's negligence claim, concluding that a reasonable jury could find that the spill existed at least as long as the plaintiff's mother was there.  *Id.*  It was not the absence of Borgata personnel inspecting the area for spills that established constructive notice in *Winters*, as Plaintiff would have us believe.  Instead, it was the presence of the plaintiff's mother in the area for at least an hour – in combination with the other facts – that established constructive notice.  The plaintiff's mother provided evidence of the temporal duration of the spill.  In the instant case, the alleged absence of Wal-Mart associates is not tied to any evidence of temporal duration.  Plaintiff's reading of *Winters* ignores this important distinction.  *See, e.g.*, *Viccharelli v. Home Depot USA, Inc.*, No. 06-4890, 2007 WL 4276657, at *3 (E.D. Pa. Dec. 4, 2007) (contrasting evidence of the "duration of the hazardous condition and the lack of attempt to remedy the situation," which can establish constructive notice, with evidence of a slippery substance and skid marks on the floor "without any further indication as to how long either existed prior to the accident," which cannot establish constructive notice).

Finally, Plaintiff points to the testimony of Jennifer Clerihan, Defendant's assistant manager, as establishing that Defendant had constructive notice of the spill. (*See* Doc. No. 18 at 7.) Plaintiff argues:

> Constructive notice can be established by the testimony of Ms. Clerihan, who expressly admitted (1) that Wal-Mart employees must constantly survey their area for problems and also inspect the floor; (2) that the floor is inherently slippery; and (3) that there was no associate assigned to the department and aisle where the plaintiff fell for the entire first shift of the day.

(Doc. No. 18 at 7.) Plaintiff's first argument is without merit. As discussed above, Wal-Mart's inspection policy does not establish a duty of care the breach of which subjects the store to liability for negligence. Plaintiff's second argument is without merit because there is no dispute that a spilled liquid – not an "inherently slippery" floor – caused Plaintiff to fall. Plaintiff's final argument is without merit because Leister was assigned to the department and aisle where Plaintiff fell. Moreover, Clerihan testified at her deposition that performing safety sweeps was "a team effort," and that other department managers took responsibility for performing safety sweeps when a department lacked coverage. (Clerihan Dep. 99 ("[I]t's basically a team effort. If your side of the building isn't covered . . . that one department would take responsibility to . . . do safety sweeps, whatever is necessary to run that side of the building on that day."); *see also id.* at 96 ("Everybody is an associate of Wal-Mart, there is not any boundary as far as that is concerned, so job description as far as a safety sweep is concerned, it's everyone's responsibility, management and associates alike."); *id.* at 79 ("The entire store is responsible for safety.").) In this regard, Clerihan's testimony is consistent with the testimony given by Leister.

18

**IV.     CONCLUSION**

For these reasons, Defendant's Motion for Summary Judgment will be granted.

An appropriate Order will follow.

BY THE COURT:


 /s/ R. Barclay Surrick
R. Barclay Surrick, J.
